to Odeymeze Property and others against the United States. Mr. Arbab. May it please the court. I'm John Arbab for the United States. I would like to reserve three minutes of my time for rebuttal. Your Honors, long ago, the Supreme Court explained that under the Just Compensation Clause, an owner of property is, quote, entitled to receive the value of what he has been deprived of and no more. To award him more would be unjust to the public. Our position in this case is that the $3.8 million just compensation award issued by the CFC in this case is contrary to that basic principle. The court itself found that the censor easement here, quote, places no restriction on the functionality of the property, unquote, meaning that it doesn't have any effect on the plaintiff's ability to use the property. And yet, the court awarded $3.8 million as an award. This result must be wrong on its face. The award does not present just compensation, but really it's a windfall for the landowner. And the award should, therefore, be reversed. Now, Mr. Arbab, let me ask you. As I understand, your position is that this was a permanent rather than a temporary taking. Yes, Your Honor. I'm going to have somewhat of the same flip side question for Mr. Marzullo. But my question to you is this. Assume for the moment the court were to conclude that this was a temporary taking, a point I acknowledge that you contest, would you still contest the amount of damages? In other words, assuming this was a temporary taking, do you challenge the fair rental value that the court arrived at? Yes, Your Honor. The $3.8 million award should be vacated. And I think the quickest way to get at that point might be to focus on one of the issues we discussed in the briefs, which is the CFC's drawing of an in-app analogy between the sensor easement here and the short-term parachuting leases that it used to arrive at the fair rental value rate of $3.8 million total, including interest. That analogy is inapt and therefore could not be a sound basis for selecting the fair rental value method. Are you saying the fair rental value method would be inappropriate in the case of a temporary taking? Or are you saying that the fair rental value method was incorrectly applied in this particular case? Well, Your Honor, if we proceed on your assumption that this taking was a temporary easement rather than a permanent easement, then under the case law, in general, fair rental value would have been the correct or at least one of the possibly proper methods to select. However, as we discussed in the briefs, the court here used a very specific analogy to come up with the $3.8 million. It focused on two particular parachuting leases, short-term parachuting leases, which in the court's words, it deemed to be the most comparable to the sensor easement. That's where you say the court erred, assuming it was. And I realize you contest whether it was a temporary permit. But you're saying, assuming it was temporary, fair rental value was correct, general methodology. But the court erred in the context of that methodology by looking at these particular, what you call, inapt leases. Yes, Your Honor. And I can explain why that is if you'd like me to. No, I didn't have that in here. But I just wanted to understand. I don't want to divert you from the rest of your argument about permanent versus temporary. But I just wanted to make sure I understood where you were if one concluded it was temporary. Yes, Your Honor. You can go ahead back to what you were doing before I interrupted. Do you mind if I keep you here? Because I'm actually very interested in the line of questioning that Judge Schall is asking. I think that Mr. Marzullo is likely to stand up and say that this appears in the government's reply brief. Like the word parachute, I don't think appears in your main brief. So I'm just a little curious from a fairness in appellate proceeding standpoint how we are to interpret the government as having fairly contested on appeal the application of the methodology in terms of the fair rental value, and in particular the analogy to the parachuting example. Yes, Your Honor. The parachuting analogy is addressed and hopefully sufficiently debunked in the government's blue brief at pages 37 through 40.  at page 25 to the parachuting. Well, the yellow brief is the reply brief, right? Yes. OK, and what page in the blue brief did you say it was at? Pages 37 through 40. 37 through 40. If I might go back to Judge Schall's invitation to address my more main point. As I said at the beginning, the $3.8 million award here is a windfall. It's not just compensation. And I believe that the doctrinal source of the lower court's error was that it's construed the government's liability stipulation as describing a temporary easement when, in fact, the stipulation describes a permanent easement. And of course, this issue is discussed in detail in the briefs. But I'd like to highlight four reasons why the easement is permanent. First of all, and maybe the most obvious, is that the easement language, the text of the easement states that the easement is perpetual. That's at Appendix 63, Paragraph 7. As we know, the dictionary definition of perpetual is lasting for an indefinitely long duration. But what is the problem is the stipulation. Is it not that the property, the land, will be vacated if it's developed? So how can it be permanent? Your Honor, the problem with, and that is what the stipulation CFC thought, but that is incorrect as well. Because any type of easement is capable of being abandoned. Pipelines can be abandoned. Perpetual pipelines can be abandoned. Perpetually granted railroad rights of way can be abandoned. But that doesn't mean that the granting of those sorts of conveyances was a temporary easement or a temporary conveyance. The problem here is that this easement does not have the kind of finite end that this court's case law has required as essentially a sine qua non of a temporary taking. It's unknown whether, if ever, the 14 sensors will be removed from this property, either one, because the Border Patrol no longer needs the 14 897 acres, or two, because the landowners obtain a sufficient number of grading permits, such that, as a practical matter, the Border Patrol can't use the 14 sensors anywhere on the 897 properties. If the government were to take over my metal plant to make bullets during a time of war, clearly they are taking it over for a period of time for as long as we're in war. But of course, we have no idea how long we'll be in war. We all assume war will come to an end at some point. Is that a temporary or permanent taking? Well, Your Honor, there can be situations in which it is known prospectively and certainly retrospectively that the easement at issue or the taking at issue is temporary. In a case of taking a property to make munitions during wartime, it would be clear to everyone that the war will come to an end at some point. And by the time just compensation is awarded, we will actually know what the date was on which the government vacated the munitions plant. The party would have to wait until the taking came to an end before they could bring suit and have a measure of damages? No, they could bring their suit so long as they were within the proper statute of limitations. But the point is that the case law seems to indicate that very routinely, or in the typical case, it is known, at least by the time, perhaps not when the case is filed, but by the time that the trial court gets to the question of just compensation, it's known when the temporary taking ended. And that's, in the case of wartime activities, that's clearly- What about the rails-to-trails cases? Would those be instances of permanent takings or temporary takings? You're probably familiar with them. We've had a lot of litigation about them from the government and the respective parties, but those are the ones where the government says, I'm going to take your property to put a railroad in, and for as long as I need to run this rail line, I'm going to have an easement on your property. Many of those railroads have ceased to be run, but would that kind of easement be temporary or permanent for as long as I need to do this? Well, Your Honor, I have to admit that I'm nowhere near as familiar with the Rails-to-Trails Act situations as you are, but in the government's brief, we do address this court's opinion in Preseau versus ICC, I believe. And we use that as an example of a situation where that case was an example where, decades ago, a railroad had been granted a perpetual right-of-way across property, and it turns out that decades later, the railroad abandons its easement, and in the context of approving a rail-to-trail use of the property, a government agency has to approve the abandonment, but our point is that even in that situation, those later circumstances don't mean that the railroad didn't receive what its conveyance said back in the 19th century, which is a perpetual right-of-way on this land. So you're saying it can be permanent even though the easement was ex post abandoned, and the property rights reverted to the property right holder? Yes, Your Honor, because I think, just as I mentioned earlier, in a very straightforward example of a permanent easement for a pipeline, it's always possible that the pipeline company might decide to abandon the easement because it's no longer using the pipeline, but that abandonment, in other words, wouldn't cause us to retrospectively say that, aha, no, the perpetual easement was really only temporary from the beginning. If you're successful, I'm gonna flip side Judge Schall's question, if you're successful in persuading us that this is a permanent rather than a temporary taking, what is the measure of damages? The government has argued it's this before and after damages throughout. Is that what you would argue to the lower court? Is that what you've exclusively argued is the appropriate measure? That is our position, Your Honor. Our position is that this court should vacate the $3.8 million award and it should remand the case to the CFC for further proceedings based on two rulings. One, that this stipulation describes a permanent easement, and number two, that the before and after test, which is the conventional test for measuring damages in the case of a permanent easement. I have to say, it sounds totally inappropriate to me, the before and after test. Almost as inappropriate as this $4 million award, to be honest with you. But the Sand case, the Vazbird versus United States Sand case, shows that there are instances like this where the before and after methodology, though it's normally applicable, just simply wouldn't be applicable. And here's one of those cases, because I'll spin out your before and after, and their damage award is zero, right? Zero. That is entirely possible, it's open. But it's not possible, because you did use their property for a long period of time. So it's not a fair methodology. That does not give them, what did you quote it, fair value for what the government took. Zero would not be fair. Your Honor, if I may address that point. If we're proceeding on, let's proceed for a moment under the assumption that the before and after test is used. That is the conventional test for measuring just compensation in the case of a permanent taking, taking of a permanent easement. So this question would, in our view, be open to further reconsideration by the trial court. It may be, it may well be, that as the government's expert appraiser testified below, that the value of this property of the fee before the placement of the censors was the same as the value of the property in fee after the placement of the censors. Yes, because this easement contained a condition that allowed for the property right owner to affect its termination, right? If they decide to develop, all they have to do is develop, and then you've got to move the boxes, either take them away entirely or move them. And so that's why I feel that this easement is such a unique animal. We're trying to pigeonhole it into a temporary or permanent notion because you all think that clearly gives a very mechanized form of damages. But it doesn't seem to me to squarely fit in either. Your Honor, I suppose it's, I mean, our position is that the conventional method is the before and after method. And on remand, that method should be applied by the Court of Federal Claims. I suppose- To pick up just if I could on your discussion with Judge Moore, if we were to agree with you that it was a permanent taking, wouldn't the appropriate thing be to leave the determination of damages in the first instance to the Court of Federal Claims on remand rather than to dictate something? That's usually what we do, I would think, that we wouldn't- Your Honor, yes, the recalculation of an appropriate damage award should be for the trial court in the first instance. I mean, we have said that in our view, we think- You're asking us, though, to sort of, if you will, dictate or tell the court what particular methodology should be used, right? Well, that would be our preference, Your Honor, just because we believe that ever since the Supreme Court's case in Virginia Electric back in the 1940s, it's been known that the conventional method on remand here should be the before and after method. Now, I do realize that under this Court's precedence in cases like Cervale and Visburg that Judge Moore mentioned, there is discretion in the trial courts to select appropriate methodology. We really don't see any reason for that particular question to remain open on a remand. The government's position has always been before and after is the proper test. The plaintiff's position has been, or is now, at least on appeal, that fair rental value is the correct method. I'm assuming just for hypothetical purposes that the court rejects the method suggested by the plaintiffs. That would generally leave us with the conventional before and after method, and I think that's what should be applied on remand. To the extent that there's going to be an award of just compensation on remand, it should be calculated under the conventional method. I suppose there could be some reason heretofore undeveloped for why there might be a more appropriate method to be applied other than the before and after test. We don't think that is the case. Okay, I think I must interrupt. We're well over your time. Let's hear from the other side, and we'll save you a little time. Thank you. Mr. Marzullo. Thank you, Your Honor. Roger Marzullo with Marzullo Law, appearing on behalf of the landowners. I think the case that the government presents to this court is a very, very different one from the one that they presented to the trial court, and that's one of the reasons that they have such difficulty articulating a reason why the case ought to be reversed. The case that the government presented at trial was that the taking consisted of 14 one-cubic-foot easements. The appraiser, Mr. Lee, appraised a taking of 14 one-cubic-foot easements, and not surprisingly, he concluded that that taking over a parcel of 897 acres had a value of zero. That is the case that the government says that the trial judge should have adopted. He did not. To their credit, they have abandoned this argument that the taking is only these 14 cubic feet, each one representing a single sensor, but what that leaves them with is nothing on the basis of which this court or the trial court could determine damages on based on their appraisal. That is, their so-called before and after appraisal is before and after the taking of a 14-cubic-foot easement. Now, both sides have cited the Cerro Valley case, which of course has been recited by this court on multiple occasions, to the effect that the trial court has very broad discretion in applying the proper method of determining just compensation. I know- Mr. Marsullo, isn't this a very strange case? Here you are arguing in favor of this being deemed temporary, the government's arguing permanence, and the reason I think it's so strange is because how in the world could a temporary easement entitle a property rights holder to significantly more money than a permanent easement of the same property would have entitled them? It would not, Your Honor. As I pointed out, the only way Mr. Lee arrived at zero was to say that the taking consists of a 14-square-foot or 14-cubic-foot easement. There is no valuation of the taking of a blanket easement in a before and after situation covering 897 acres. So it's a false premise. So even if the government were to prevail on the notion that this is a permanent easement, you're saying that a whole new evaluation would have to be done as to the appropriate measure of damages and it wouldn't be this 14-square-foot theory. Absolutely, and for that reason, Your Honor, what the government's really asking for is a do-over. They rolled the dice at the trial court. They said, let's try to convince Judge Wheeler that this is only a 14-square-foot easement which everybody agrees is worth nothing. They lost. Now they want this court to send the case back and say to Judge Wheeler, let us go get a whole new appraisal, the one we should have done before based on this before and after theory, and let's have a whole new trial. And that obviously is not the way cases ought to be tried. But do you agree that if this is deemed a permanent easement that the before and after methodology is the appropriate or most commonly used methodology for permanent easement? It's interesting, Your Honor, isn't it, that you used the word appropriate, counsel has used the word proper, and yet that doesn't seem to be the standard that this court has applied in reviewing trial court determinations. The standard deals with either abusive discretion or clear error. And what counsel, I think, has argued for here, I think what he told the court he wanted, was for this court to remove that discretion from Judge Wheeler and tell him that there was only one, quote, proper way of valuing this property. Now, the fact that it's a temporary easement, I think, is abundantly shown by the language. But just before, excuse me, Mr. Marzullo, just before you get on to temporary versus permanent, I just wanna, so it's your position that if the court, contrary to what you're urging, were to conclude that this was a permanent easement, you're saying we should send it back and let the Court of Federal Claims determine, under those circumstances, the correct measure of damages? Your Honor, I would propose that the court look at this from a slightly different perspective. The question is whether the approach that Judge Wheeler took to valuing this property was either an abusive discretion or merely erroneous. A stepping stone on the way to that determination was whether it's a temporary or a permanent easement. And that may or may not be something the court reasoned. He found temporary. He did. And that led him into the fair rental value approach. That's correct. And we hear what the government says about that. They say generally that approach was correct, but it was wrong to look at the parachute leases. But why would it not be appropriate if we determined this was a permanent easement to leave it to him to decide what the correct damages approach is under that circumstance? Wouldn't that... That would seem to be the way to do it, wouldn't it? Well... Rather than dictate either way, dictate as the government would have us do. If the government wants to say you have to use before and after. Yes, well, what happened... But understand, Your Honor, that this before and after is a stalking horse for getting an opportunity to retry this case on a theory that was never presented in the first instance. Well, didn't they say it was permanent taking below? Yes, they said it was a permanent taking of 14 cubic feet. That's the case they tried. Now they want you to say... And when Judge Wheeler said, no, that's wrong. It's 897 acres. And he came up with a figure. Now they want to go back and say, okay, now let us go out and get a new appraisal of 897 acres and present that to Judge Wheeler and see if we can convince him once again as to the figure. I guess my point, Your Honor, is this was not a liability trial. This was a damages trial. Well, but don't you all have the burden of proving the amount of damages? And if there's some problem with your proof, namely if the parachuting analogy is clearly erroneous for the reasons that the government says, then doesn't this go back for both of you to get a new shot at it? Now you've used the phrase clearly erroneous, which the government never did say, Your Honor. But they've talked about what's proper and what's appropriate and what is conventional, I believe. Those were the terms they used. I assume, though, you'd like me to use the correct standard of review, right? Yes, Your Honor. So if I were to conclude it's clearly erroneous for the same reasons the government argued it was improper, then wouldn't it be best for you both to have a new shot below to argue? Because your evidence is out the window and you've got the burden of proof on this issue. Well, yes, to some extent, Your Honor. Let's remember that the burden of proof in a damages case really is governed largely by the notion that damages can't be speculative. But once the liability is established, the plaintiff's burden of proof is not quite so burdensome, if you will, with respect to what those damages are. And here, both the procedural unfairness and the fact that what the government is doing is sort of taking a step in the process. That is, the determination of temporary versus permanent. They might as easily have picked the 14 cubic feet versus 897 acres or the question of the extent of the easement. What does it authorize? What does it not? How detailed is this court going to get in reviewing damages determinations and saying to the court, well, I think this one step in your analysis was wrong. Suppose the court uses before and after. Is this court then going to say, well, you know, I think comparable number 16, the parachute leases, I don't think that's the number, but whatever it is, I'm going to review the comparables. I'm going to say what you thought was comparable really isn't comparable. Therefore, I'm going to send it back. Isn't our obligation to review the underlying facts to determine if any of them are clearly erroneous? And if they are, aren't we supposed to correct that or make appropriate holdings? Well, in the damages determination, I think the question is whether those particular, whether that fact is so outcome determinative, if you will, that this court, I pose that question, to what extent is this court going to examine every step in a logical chain that leads to a damages determination? I read quite closely your declaration as well as the lower court opinion, and he based the entire determination of 41 feet or $41 per acre on an evaluation of two leases, the two different parachute leases, and there is no other basis. He rejected your expert on all of the other bases that he opined in favor of. And so if I were to conclude that those two bases are not appropriately analogous, then haven't I just said there is no basis at all for the determination of damages that he arrived at? And doesn't that necessitate a redo at a minimum? Wouldn't you want a redo as opposed to me saying, oh, sorry, that was the only ground you gave. They rejected most of it, I rejected part of it. You're out of luck. Absolutely, Your Honor. It seems to me pretty extraordinary, however, for this court to look at the sole relevant evidence, because there's no other relevant evidence, and say parachute leases are not analogous enough. I can't think, unless this court wants to tell this, the trial judge, that there is some better way of doing this analysis. And by the way, the trial judge didn't reject our appraiser. It's our appraiser who said the parachute leases are the most analogous, and that's what he based his appraisal on. You tell us in the briefs that the land was traversed, it wasn't just the 14 cubic feet, but that throughout this period, that there was a good deal of passage back and forth. How extensive was the evidence before the trial court as to the actual usage of the land? Oh, very extensive, Your Honor. The evidence was that the Border Patrol is on that property 24 hours a day, seven days a week. This property is right on the Mexican border, and there is no fence between Mexico and the United States. The court found in one- Well, hold on, hold on, Mr. Mazzullo, just to make sure I understand, because I want to be clear. The Border Patrol was on the property, but the lower court rejected all of that because that was in plain sight and not properly brought. The only basis that you have recovered for is the boxes underground, the 14 boxes. I think there were 11 or something, because three were removed, because they did, in fact, file for permits, right? But anyway, in any event, so the ingress and egress, the only ingress and egress that can give rise to your damage award would be the installation of the boxes and the removal of the boxes, correct? No, Your Honor. The easement defined by the government in paragraph seven of its stipulation includes as well the operation of the boxes. We had extensive discussion of that issue at the trial court, and the way in which these boxes operate, which is that they are tripped every day, multiple times a day, and that they summon agents to respond to them. And it was our position, and I think the trial judge understood this, that an easement to operate these electronic sensors, which send out this radio signal, and to summon agents to intercept illegal aliens is, in fact, part of what the damages are for. So the question is, what would be the price at which a willing buyer, willing seller, would have entered into a lease of 897 acres to allow the installation of these kinds of interactive electronic equipment that summons people to intercept illegal aliens multiple times a day? Mr. Marzullo, let me go back. I mean, the cases, and to what you were discussing earlier, the cases do seem to draw this distinction between permanent taking and temporary taking. I think you'd agree with that. Yes, Your Honor. And they set out one methodology of damages, generally, or they say, if you have a permanent taking, you go down Road A. If you have a temporary taking, you go down Road B. I mean, again, why, if the court would, I just don't understand exactly, why, if the court were to conclude that this was a permanent taking, we just shouldn't send it back for a determination of the appropriate damages, and let both sides make whatever arguments they choose to make, neither side being deemed to have waived anything, and go from there? I agree with you, Your Honor, if the court were to make that determination, that that would be the thing to do. You did mention the cases, and I would be remiss if I didn't draw the court's attention, once again, to Bass Enterprises, which was a precise reversal in the party's roles. There, of course, the plaintiff was not allowed by the government to use its oil and gas lease, and the court found a permanent taking. The government appealed and said, oh no, that wasn't permanent, it was temporary because the Congress has told EPA to determine whether or not it is environmentally sound to allow this area to be drilled for oil. And the argument before this court was precisely the one that counsel referred to, and that is, but EPA hasn't made a decision. There's no deadline for EPA to make a decision. Who knows when EPA will make a decision? This court said the need for a specific date, a specific deadline, let alone the fact that the taking has terminated, is not necessary. And I think, Your Honor, you referred to the rails-to-trails cases, which arise in the same way. We know the statute of limitations begins at the time the order is issued by the ICC, or I guess it's the Service Transportation Board now, and yet the termination process may be sometime well into the future. If this easement were, as counsel discussed, simply subject to abandonment, well, anything is subject to abandonment. The property is subject to abandonment. Mineral interests, forest ownership, river ownership, all these things are subject to abandonment. But this easement specifically says if the property is developed, then the owner may give 30 days' notice and the easement will terminate. And note that between the liability trial in 2008, when the stipulation was filed, and the damages trial in 2009, a period of one year, three of the 14 censors were, in fact, removed. And the government, once again, at trial, argued precisely, as Judge Moore noted, that one of the reasons that these easements were valueless is because the censors were removed and the easements would terminate. They've completely reversed their position here. I'd like to note just for one minute, if I might, Your Honor, that there is one error that the trial court did make, and that is the failure to include all of the other acreage on which censors had been installed. The government thoroughly admitted to that. The government has never denied that there were censors prior to the ones listed in the stipulation, and that these censors, going back to the 1980s, were on all parcels other than parcel eight. And I'll just refer the court to the chart in our gray brief on page 25, where we've summarized the testimony as to each and every one of those parcels. The trial judge just said, well, I thought the testimony was vague with respect, I think, if the court reviews that testimony, and the fact that the government itself brought a motion in limine in the damages case to preclude this evidence in which the government itself said, there have been censors out there since the 1980s. We told the plaintiff, and you shouldn't allow that evidence in, that the fact is that if there is an error, that error consists in the trial judge not having awarded just compensation for the censors on all the other parcels, going back to 1980. Okay, thank you, Your Honor. Thank you, Chris. We have that point in mind, Mr. Mazzella. Okay, Mr. Arbad. Enlarge Mr. Arbad's time as well. We've run over five minutes. Thank you, Your Honor. I have, I think, about four points I'd like to tick off in rebuttal. First of all, just to be clear, the government is not asking this court to enter a particular damages award, $1, $100, zero dollars. We think that that is an issue that is properly within the province of the trial court. On remand, Mr. Marzullo made some references to the appraisal using the before and after method of the government's appraiser, Mr. Lee, and as we note in our brief, we understand that the plaintiffs don't agree with Mr. Lee's assessment. We believe it was legitimate, but that's a question, probably among others, that should be for the trial court to assess on remand in the first instance. It's usually not the province or not the task that's put upon an appellate court to do something as fact-intensive as that. Second of all, Mr. Marzullo said that the government wants a do-over on remand or that we want a whole new trial. That's not the government's position. It very well could be, and I think it probably is the case, that without reopening the record for additional trial proceedings, there's enough in this very extensive record for the CFC to go back and make a new award using the instructions from this court, namely that what we have here is a permanent taking and possibly that what the judge should be applying on remand is the conventional before and after method. Thirdly, Mr. Marzullo made some reference to the operation of the censors and that the easement speaks in terms of the right to operate the 14 censors. But the upshot of that is, I believe, that on appeal to this court, the plaintiffs are not claiming as a ground of error that the trial court should have given them even more money based on what they conceived to fall within the idea of operation of the boxes. As Mr. Marzullo said at the very end of his argument, the only thing that they believe the trial court erred on was not expanding the scope of the censor liability to other parcels beyond the five parcels and the time periods that are stated in the government's liability stipulation. That doesn't have anything to do with the operation of the boxes. Mr. Marzullo mentioned the Bass Industries case. This is also discussed in the government's briefing and I might just make the point that the important distinguishing feature of the Bass case is that there, there was a statutorily mandated deadline and process whereby the federal agency involved, the EPA, would have to make a decision one way or the other on whether it was going to have to condemn the plaintiff's leases or not. Robert, let me ask you one question. When you're determining whether you have a permanent or a temporary taking, to what point in time do you look to make the determination? Do you look at the start of the easement or taking or do you do it some other way? Your Honor, I think in this case, the analysis is fairly simple because the only thing that the trial court looked at and the only thing that we're arguing about is the stipulation. So it would be governed by how one interprets the language of the stipulation, which as we point out is a question for plenary review on appeal. If I could just go back to Bass for a second. There's no analogous or equivalent statutorily mandated date or process by which the Border Patrol in this case will have to make a determination one way or the other as to whether it's gonna remove all 14 censors from this property and not ever redeploy them anywhere else on the property. That's, in fact, that's one of the features of this case that supports our position that the easement described in the stipulation is permanent because it's just no one knows when any of those potentially terminating events are going to happen. Just as one never knows when a pipeline company or a railroad may or may not decide to abandon a perpetual easement. Is it that one never knows when they'll happen or one never knows if they'll happen? Is that the difference? One never knows whether they will happen, if ever. If I might just, well, I have 10 seconds. I think I'll stop there unless the court has any further questions. I think that we have the critical arguments in mind. Thank you, Mr. Auerbach and Mr. Marzella. The case is taken into submission. That concludes the arguments that are being orally presented this morning. All rise. The honorable court has adjourned and sent the warm warning at 10 a.m. Thank you. My wife, Nancy. Hi. Good job. Good job. I hope not too good a job. Yeah. The case that was screwed up the trail here. You got your money back. Yeah, you got stuck with doing, I must say that I was, just wondering if you agree, are they really going to try to argue with us? Which means, you were smart. Hopefully, it wasn't too much. Yeah, we'll see where we go. Nice meeting you, John. Tell Jim and the folks back at home I said hello. A number of them are here. Ah, well, good. I just love having an audience, having a, just that voice. Yeah. Please. Well, good luck to you. You too. We did the case. We did the case. We did the case. We did the case. Yeah. I think probably.  I think probably. I'm sure. I'm sure.